SFC VALVE CORPORATION, Plaintiff,

v.

WRIGHT MACHINE CORPORATION,
G. Lee Schwartz and Thomas C.
Mack, Defendants.

No. 88–6847–CIV.

United States District Court,
S.D. Florida.

Sept. 1, 1989.

Rudolph Garcia, Saul, Ewing, Remick &
Saul, Philadelphia, Pa., Rudolph F. Aragon,
Coffey, Aragon, Martin and Burlington,
P.A., Miami, Fla., for plaintiff.

Eugene L. Heinrich, Heinrich, Gordon,
Batchelder, Hargrove, Weihe & Gent, Fort
Lauderdale, Fla., for defendants.

## MEMORANDUM ORDER

SCOTT, District Judge.

This cause is before the Court on a motion for summary judgment presenting an unusual legal question. The motion must be considered in the context of the myriad of relationships between the parties. Thus, we will first discuss the background of the litigation before turning to the legal issue.

## I. BACKGROUND

Plaintiff SFC Valve Corporation ("SFC") is the successor in interest to Southern Fluid Controls Corporation, Inc. ("Southern") on certain government contracts. SFC acquired Southern's assets by sale in Florida state court under a novation agreement, and under a plan of reorganization approved by the United States Bankruptcy Court for the Southern District of Florida, *In re Southern Fluid Controls Corp.,* Case No. 85–01473–BKC–SMW. Defendant, Wright Machine Corporation ("Wright"), is the successor in interest to Worcester Taper Pin Corporation ("Worcester"), through corporate merger. Wright was also a creditor of Southern in the bankruptcy proceedings. The individual Defendants, G. Lee Schwartz and Thomas C. Mack, as well as other individuals added to the Amended Complaint,[1] were officers and employees of Worcester prior to the merger, and presently serve as officers and employees of Wright.

The wrongdoing alleged in the complaint arises from the relationship between Southern and Worcester, the predecessors in interest to the named parties here. Plaintiff, SFC, alleges that in early 1984, Southern ordered a quantity of Sub–Safe Level 1 valve stems from Worcester for use in products to be supplied pursuant to contracts with the United States Department of the Navy. The Government's specifications for Level 1 materials state:

The material covered by this contract will be used in a crucial shipboard system. The use of incorrect or defective material would create a high probability of failure resulting in a serious personal injury, loss of life, loss of vital shipboard systems or loss of the ship itself. Therefore, the material has been designated as Level 1 material and special control procedures are invoked to ensure receipt of correct material.

Under the contract with Southern, Plaintiff alleges that Worcester was to provide certifications by all facilities involved in production of the valve stems, for safety and security purposes.

Plaintiff alleges that, despite these specifications, Worcester intentionally altered the certifications accompanying the stems, with full knowledge of the risks created. According to Plaintiff, Defendant delivered the stems with fraudulent certifications between March 1984 and March 1985. Subsequently, in 1985, Southern filed a voluntary petition in bankruptcy court under Chapter 11 of the Bankruptcy Code. The bankruptcy court approved Southern's plan of reorganization on May 8, 1986. Plaintiff, SFC, acquired Southern's assets the same month, with the approval of the bankruptcy court.

Plaintiff claims that it did not discover the alleged fraud until four months after acquiring Southern's assets, on or about September 30, 1986. According to Plaintiff, many of the stems had already been incorporated into products supplied to the Department of the Navy, and "thereby posed a potential safety hazard to Naval personnel and property." When Plaintiff notified the Defense Logistics Agency of its discovery, all SFC contracts with the Navy were put on hold, pending an investigation. Because the certifications and stems were not traceable, the Government refuses to accept any stems provided to SFC by Worcester. The Government ultimately debarred Worcester based on a finding of intentional and negligent wrongdoing.

The Southern bankruptcy case was closed on October 19, 1988. Two weeks

---

1. The individuals added to the Amended Complaint are Carl Cervini, Robert G. Roderick, Richard Meschke and Paul McCrohon.

later, on November 4, 1988, SFC brought this action.

The sequence of events leading to the litigation is the basis of Defendants' motion here. Thus, for purposes of clarity, the Court has condensed them into the following table.

| | |
|---|---|
| March 1984–March 1985 | Defendants' predecessor, Worcester, allegedly falsifies certifications and delivers them to Plaintiff's predecessor, Southern. |
| 1985 | Southern files bankruptcy. |
| May 1986 | Bankruptcy court approves Southern's plan of reorganization and Southern's sale of assets to SFC. |
| September 30, 1986 | SFC discovers Worcester's alleged fraud. |
| October 19, 1988 | Bankruptcy case closes. |
| November 4, 1988 | SFC sues Defendants in this action. |

## II. DISCUSSION

In the amended complaint, Plaintiff has asserted four causes of action: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, breach of contract, and negligence. Defendants' motion for summary judgment claims that the action should be dismissed to proceed in bankruptcy court. Defendants contend that the action is based on conduct occurring prior to the Southern bankruptcy proceedings, and was therefore an asset of the bankrupt's estate. Because Southern failed to list the asset in the bankruptcy schedules, Defendants maintain that SFC could not have acquired it by virtue of assignment. Accordingly, Defendants ask the Court to transfer the action to bankruptcy court for a determination by a trustee as to whether the claim should be administered for the benefit of creditors or abandoned to the successor in interest.

Plaintiff does not dispute the factual basis of Defendants' position. Rather, Plaintiff questions its legal significance. Plaintiff emphasizes that the action is grounded in fraudulent conduct which it did not discover until after the predecessor's discharge from bankruptcy. Plaintiff thus argues that where the asset was undiscovered, it is of no consequence that the debtor failed to list the asset in bankruptcy. Accordingly, Plaintiff urges the Court to deny the motion for summary judgment and proceed to the merits at trial.

Both parties rely on a single case decided in the Ninth Circuit by Judge Kennedy, now an Associate Justice of the United States Supreme Court.[2] In *Stein v. United Artists Corp.*, 691 F.2d 885 (9th Cir.1982), the court held that the assignee of a bankrupt could not subsequently assert an antitrust action against defendants without first seeking a reopening of bankruptcy proceedings or obtaining an order of abandonment. Judge Kennedy reasoned that the debtor's failure to list the antitrust claim in bankruptcy court prevented the asset from vesting in the assignee at the close of the bankruptcy proceedings. The asset remained *in custodia legis* in the bankruptcy court.

Plaintiff attempts to distinguish *Stein* by arguing that the asset was undiscovered at the time of the bankruptcy proceedings, and therefore could not have been listed. However, as an initial matter, the Court observes that the bankruptcy case was still pending at the time of Plaintiff's discovery. Thus, that forum was readily available to Plaintiff to assert its claim. Moreover, the court in *Stein* did not predicate its ruling on the question of knowledge or notice. Instead, the court fashioned a single rule to govern all instances in which the assignee of a bankrupt seeks to assert an unlisted asset. The court explained:

> If a debtor in possession were permitted to omit claims in bankruptcy and later assert title to them, there might be an inducement to do so, to the prejudice of creditors' interests. Such a rule would

---

**2.** During oral arguments, Plaintiff argued for the first time that *Stein* was no longer good law. Plaintiff relies on *Natco Industries, Inc. v. Federal Insurance Co.*, 69 B.R. 418 (Bankr.S.D.N.Y. 1987). However, the unlisted asset issue was not considered in *Natco*, and was apparently not raised by the defendant. Moreover, the *Natco* court repeatedly cited *Stein* with approval for the policy considerations underlying that decision.

undermine the fiduciary status of the debtor in possession. Whether or not the failure to list the asset in the case before us was intentional, the opportunity for concealment must be considered in formulating the proper general rule.

*Stein,* 691 F.2d at 891.

■ In addition, and of note here, the *Stein* court rejected the plaintiff's argument that the defendants lacked standing to raise the interests of creditors as a defense to the action. The court concluded that "the right to sue goes to the essential merits of the claim ... [and] only the injured party ensures the adversary interest necessary to prosecute the suit." *Id.* at 893.

### III. CONCLUSION

■ Accordingly, we conclude that *Stein* is indistinguishable from the facts alleged in this case. Southern failed to list the asset in bankruptcy court, and therefore could not have assigned the asset to Plaintiff, SFC. Plaintiff cannot pursue the action in this forum without first obtaining an abandonment from the bankruptcy court, or seeking a reopening of the bankruptcy proceedings. The state of knowledge of Plaintiff or its predecessor, Southern, is simply not relevant to this determination.

The Court is confident that this is the only fair result. As Defendants correctly point out:

> Plaintiff, a successor to the bankrupt, is now trying to assert a multi-million dollar cause of action on its own behalf, when creditors that were owed over a million dollars (including Defendants) were shut out of the potential recovery at fifteen cents on the dollar. If this cause of action is at all legitimate, it should be transferred to the bankruptcy court for a determination of whether it should be administered for the benefit of creditors, by a trustee in bankruptcy.

Defendants' Renewed Motion for Summary Judgment, at page 3.

The Court is mindful of the possible consequences to Plaintiff of an untimely dismissal of this action. Defendants have previously raised the defense of statute of limitations, and are unwilling to waive that defense upon dismissal. The Court observes that numerous conflicts between the parties exist. Plaintiff is opposed to the bankruptcy forum under any terms, because, should Plaintiff prevail on the merits, other creditors will be entitled to share in the proceeds. Defendants, while invoking the rule of *Stein,* which is designed to protect creditors, refuse to waive the statute of limitations for the benefit of creditors. Moreover, Defendant Wright was itself a creditor in the Southern bankruptcy proceedings.

The Court is reluctant to dismiss this case if recovery would then be precluded by the statute of limitations. Certainly, creditors could not benefit from notice of a stale claim. Yet the Court is determined to preserve the rights of creditors interested in this litigation, and ensure that any wrongdoing by Defendants will not go unredressed.

The *Stein* court suggested that "the most sensible solution" is to order a stay on the plaintiff's motion. *Stein,* 691 F.2d at 893. While Plaintiff has not so moved, Plaintiff did indicate at oral argument that a stay would be the wiser course. The Court is not inclined to order a stay of these proceedings *sua sponte,* however, as Plaintiff may prefer to pursue an immediate appeal of this novel issue to the Eleventh Circuit.

Accordingly, it is hereby ORDERED as follows:

1. Defendants' Motion for Summary Judgment is GRANTED.

2. Within seven (7) calendar days of entry of this Order, Plaintiff shall either move for a stay of these proceedings, or indicate its intention not to do so. Should Plaintiff fail to request a stay, the Court will dismiss this action without prejudice, *sua sponte.*

3. Should this action proceed to the bankruptcy forum, Plaintiff shall immediately notify all interested creditors of its claim, and otherwise fully comply with the rules applicable to those proceedings. The

**724**

Court will retain jurisdiction to effectuate the terms of this Order.

DONE and ORDERED.